UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
GLORIA HALCOMB,                           )
                                          )
         Plaintiff,                       )
                                          )
    v.                                    )      Civil Action No. 02-1336 (PLF)
                                          )
NOPADON WOODS, *et al.*,                  )
                                          )
         Defendants.                      )
_____       )

OPINION

         This matter is before the Court on two separate motions for judgment as a matter

of law pursuant to Rule 50 of the Federal Rules of Civil Procedure, one filed by defendant

Nopadon Woods and one filed by defendant the District of Columbia.[1]

I.  BACKGROUND

         This case arises out of the arrest and detention of plaintiff Gloria Halcomb in

October 2001.  Ms. Halcomb entered the District of Columbia's Metrorail system on October 30,

2001 at the Union Station entrance.  Defendant Nopadon Woods, a Washington Metropolitan

---

[1]      The papers submitted in connection with Officer Woods' motion include:
Memorandum in Further Support of Motion for Judgment on Plaintiff's Claims Against
Defendant Woods ("Woods Mot."); Plaintiff's Opposition to Defendant Nopadon Woods'
Motion for Judgment as a Matter of Law; Memorandum in Reply to the Opposition of Plaintiff to
Defendant Woods' Motion for Judgment; Plaintiff's Notice of Supplemental Authorities in
Further Opposition to Defendants' Motions for Judgment as a Matter of Law; and Defendant
Nopadon Woods' Response to Plaintiff's Supplemental Memorandum Regarding Woods'
Motion for Judgment.  The papers submitted in connection with the District of Columbia's
motion include: Defendant District of Columbia's Motion for Judgment as a Matter of Law
("D.C. Mot."), and Plaintiff's Opposition to Defendant District of Columbia's Motion for
Judgment as a Matter of Law ("D.C. Opp.").

Area Transit Authority ("WMATA") police officer, claims that Ms. Halcomb entered without paying her fare.  Ms. Halcomb denies that she entered without paying.  In any event, Ms. Halcomb contends that Officer Woods and several officers of the District of Columbia Metropolitan Police Department ("MPD") acted unlawfully in arresting and detaining her until the following morning.  According to Ms. Halcomb, the officers' unlawful actions deprived her of her civil rights and caused her to suffer physical injury and severe emotional distress.

Ms. Halcomb filed suit on July 1, 2002, and the case was tried before a jury over the course of two weeks in December 2007.  At trial, Ms. Halcomb asserted four claims against Officer Woods: (1) a claim under 42 U.S.C. § 1983 (based on the allegation that Officer Woods violated her constitutional right to be free from unreasonable searches and seizures); (2) a common law false arrest claim; (3) a common law assault and battery claim; and (4) a common law intentional infliction of emotional distress claim.  She also sought punitive damages against Officer Woods.  In addition, Ms. Halcomb asserted one claim against the District of Columbia: a common law intentional infliction of emotional distress claim based on the actions of unidentified MPD officers.  At the conclusion of the evidence, both defendants moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.  The Court deferred ruling on those motions and submitted the case to the jury in accordance with Rule 50(b).  After the jury was unable to reach a verdict as to any of Ms. Halcomb's claims, the Court declared a mistrial.  Defendants subsequently renewed their motions for judgment as a matter of law.   Ms. Halcomb opposed those motions and they are now ripe for adjudication.

## II.  STANDARD

After a jury trial, the Court may grant a motion for judgment as a matter of law under Rule 50 only if it finds that "a reasonable jury would not have had a legally sufficient evidentiary basis to find for the [non-moving] party on that issue[.]"  FED. R. CIV. P. 50(a)(1). "In making that determination, a court may not assess the credibility of witnesses or weigh the evidence."  Hayman v. Nat'l Acad. of Sciences, 23 F.3d 535, 537 (D.C. Cir. 1994).  See also 9B WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D, § 2524 at 270-85 (2008) ("WRIGHT & MILLER").  Moreover, the Court must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor.  See Hendry v. Pelland, 73 F.3d 397, 400 (D.C. Cir. 1996).  See also McGill v. Munoz, 203 F.3d 843, 845 (D.C. Cir. 2000) ("Judgment as a matter of law is appropriate only if the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in [the non-moving party's] favor.") (internal quotation marks and citation omitted); Pitt v. District of Columbia, 404 F. Supp. 2d 351, 353-54 (D.D.C. 2005), *aff'd in part and rev'd in part on other grounds*, 491 F.3d 494 (D.C. Cir. 2007) (same).  That is not to say, however, that a mere scintilla of evidence will defeat a Rule 50 motion.  "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury might reasonably find a verdict for that party." WRIGHT & MILLER § 2524 at 250-57.

Upon careful consideration of the evidence presented at trial, the parties' papers and the relevant case law, the Court concludes that a reasonable jury *would* have had a legally sufficient basis on which to find for Ms. Halcomb on her claims against Officer Woods for

violations of her civil rights, false arrest, assault and battery, and intentional infliction of emotional distress. The Court also concludes that a reasonable jury could have found that Officer Woods was liable for punitive damages. In contrast, the Court concludes that a reasonable jury *would not* have had a legally sufficient basis on which to find for Ms. Halcomb on her intentional infliction of emotional distress claim against the District of Columbia. Only the intentional infliction of emotional distress claims require further discussion.

### III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To establish liability under District of Columbia law for intentional infliction of emotional distress, a plaintiff must show: "(1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) cause[d] the plaintiff severe emotional distress." Larijani v. Georgetown Univ., 791 A.2d 41, 44 (D.C. 2002). See also Pitt v. District of Columbia, 491 F.3d at 505-06.

The first element of the tort is satisfied only when the conduct at issue is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Homan v. Goyal, 711 A.2d 812, 818 (D.C. 1998) (citation omitted). Liability "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965) ("RESTATEMENT"). In determining whether specific acts rise to the extreme and outrageous level, courts are guided by "(1) applicable contemporary community standards of offensiveness and decency, and (2) the specific context in which the conduct took place." King v. Kidd, 640 A.2d 656, 668 (D.C. 1993).

The second element requires that the defendant inflicted severe emotional distress in an intentional or reckless manner.  See RESTATEMENT § 46 cmt. i.  In some cases it is "possible to infer the existence of . . . intent or recklessness . . . from the very outrageousness of a defendant's conduct."  Sere v. Group Hospitalization, Inc., 443 A.2d 33, 37 (D.C. 1982).

The third element of the tort requires that the plaintiff suffer "severe emotional distress."  To qualify as "severe," the distress asserted must be "of so acute a nature that harmful physical consequences might be not unlikely to result."  Sere v. Group Hospitalization, Inc., 443 A.2d at 37 (quoting Clark v. Associated Retail Credit Men, 105 F.2d 62, 65 (D.C. Cir. 1939)).  See also Hudson v. District of Columbia, 558 F.3d 526, 533 (D.C. Cir. 2009) (liability attaches only if a plaintiff's emotional injury is "serious" and "verifiable").  Mere "mental anguish" and "stress" do not rise to the level of severe emotional distress.  Ross v. DynCorp, 362 F. Supp. 2d 344, 360 (D.D.C. 2005) (citing cases).  In addition, the distress asserted may not be "exaggerated and unreasonable" under the circumstances, "unless it results from a peculiar susceptibility to such distress of which the actor has knowledge."  RESTATEMENT § 46 cmt. j. See also Langer v. George Washington Univ., 498 F. Supp. 2d 196, 201 (D.D.C. 2007).

### A.  Officer Woods

Officer Woods is not entitled to judgment as a matter of law on Ms. Halcomb's intentional infliction of emotional distress claim because a reasonable jury could have found in her favor on this claim.  Indeed, the Court agrees with Ms. Halcomb that a reasonable jury could base such a finding on just one of her allegations against Officer Woods: that is, that Officer

Woods told her that "now that I know where you live, I ought to come out to your house and put

a bullet in your head, having me to go through all this shit."  Transcript of Trial at 36 (Dec. 11,

2007) (testimony of Ms. Halcomb).  If Officer Woods did indeed make such a statement, a jury

could conclude that it constituted extreme and outrageous behavior; that it was intended to inflict

emotional distress; and that Ms. Halcomb suffered severe emotional distress as a result.[2]

### B.  The District of Columbia

Ms. Halcomb bases her intentional infliction of emotional distress claim against

the District of Columbia on three events, all of which occurred after her arrest by Officer Woods

and before she was released from MPD custody the next morning.  According to Ms. Halcomb,

the District is liable for the intentional infliction of emotional distress because MPD officers:

> 1.  Confined her in a "strong room" or cell at D.C. General Hospital with a man dressed as a woman for several hours, and took no corrective action even after she informed them that the other person in the cell was a man;
>
> 2.  Made inappropriate, lewd and sexual remarks about her and to her; and
>
> 3.  Transported her from an MPD facility to D.C. General Hospital in an "intentionally reckless" manner, D.C. Opp. at 2 – that is, by handcuffing her, placing her on a bench without a seatbelt in the back of an official vehicle, and driving "very, very fast."  Transcript of Trial at 26 (Dec. 11, 2007) (testimony of Ms. Halcomb).

---

[2]     Officer Woods argues that he is entitled to judgment as a matter of law on this claim because "Ms. Halcomb failed at trial to provide credible testimony or other evidence, lay or expert, that this statement . . . caused her to experience 'severe emotional distress.'" Woods Mot. at 13.  But Ms. Halcomb was under no obligation to produce expert testimony or evidence of treatment to demonstrate that the distress she suffered was "severe."  See Homan v. Goyal, 711 A.2d 812, 821 (D.C. 1998); see also Adams v. Vertex, Inc., Civil Action No. 04-1026, 2007 WL 1020788, at *4 n.7 (D.D.C. Mar. 29, 2007).  Nor is it of any moment, in the Rule 50 context, whether Ms. Halcomb's testimony was "credible."  Woods Mot. at 13.  See supra at 3-4.

The District moves for judgment as a matter of law on two primary grounds. First, the District argues that Ms. Halcomb's claim must fail because none of her three allegations abut the manner in which she was detained by the MPD, even if true, describe sufficiently "extreme and outrageous" conduct.  See D.C. Mot. at  14-20.[3]  Second, the District contends that Ms. Halcomb's claim must fail because she did not offer expert testimony establishing whether or to what extent the severe emotional harm she claims to have suffered was caused by the alleged actions of MPD officers.  Such expert testimony was required, in the District's view, because even assuming that Ms. Halcomb suffered severe emotional distress, that distress could have been caused entirely or in part by (1) specific traumatic events that occurred prior to Ms. Halcomb's arrest and detention, or (2) the alleged actions of Officer Woods.  See id. at 12-14.  Although the Court does not agree entirely with the District's reasoning, it does agree that the District is entitled to judgment as a matter of law.

### 1.  Transport to D.C. General Hospital

First, the Court rejects Ms. Halcomb's argument that a reasonable jury could have found in her favor based on the allegation that she was transported to D.C. General Hospital by MPD officers in an extreme and outrageous manner.  See D.C. Opp. at 3.  Ms. Halcomb described her trip in the back of a police vehicle as follows:

---

[3]        The District also argues that, contrary to Ms. Halcomb's testimony, she was not transported by MPD officers driving a District of Columbia police vehicle but by WMATA officers driving a WMATA vehicle.  See D.C. Mot. at 5-6, 15-16.  Even though the testimony of other witnesses – including one called by Ms. Halcomb – supports this view, the Court cannot weigh the evidence and make credibility determinations on a Rule 50 motion for judgment as a matter of law.  See supra at 3-4.

> The bench that I was seated on was an iron bench.  I had no way of
> controlling, you know, like, it was no way that I was – that I could
> hold on and just maintain just a solid seat there on that bench.
> They drove very, very fast.  I was thrown all, you know, just
> around from left to right in the back of the van because my hands
> were cuffed behind my back.  And I had not a grip, I'm just
> gripping with the heel of my shoes to try to break my fall, and I
> was just being thrown around in the back of the paddwaygon[.]

Transcript of Trial at 26 (Dec. 11, 2007).  Even assuming, as the Court must, that "[t]he vehicle

in which Ms. Halcomb was transported careened at high speeds making jerking and bumping

motions," D.C. Opp. at 3 (citations to record omitted), Ms. Halcomb cannot recover in tort based

on this allegation.  First, the driver's conduct, even as described by Ms. Halcomb in her

testimony, was not sufficiently "outrageous in character."  Homan v. Goyal, 711 A.2d at 818.  It

is difficult to imagine that any driver, even one intending to drive as smoothly as possible, could

navigate the streets of the District of Columbia  in a vehicle that resembles "a U-Haul truck"

without making many jerking and bumping motions.  Transcript of Trial at 25 (Dec. 11, 2007)

(testimony of Ms. Halcomb).  Second, Ms. Halcomb offered no evidence that the driver of the

vehicle acted with the requisite intent to inflict severe emotional distress.  And while a

reasonable jury may infer the intent element from the act itself if it is sufficiently outrageous, see

Sere v. Group Hospitalization, Inc., 443 A.2d at 37; Ross v. DynCorp, 362 F. Supp. 2d at 359

n.8, this act simply was not outrageous enough to support such an inference.[4]

---

[4]       In her opposition to the District's motion for judgment as a matter of law, Ms.
Halcomb suggests that the vehicle was driven so violently that she was thrown "into the vehicle's
metal floor and walls."  D.C. Opp. at 3.  Ms. Halcomb's trial testimony, however, does not
support that suggestion.  Ms. Halcomb testified that she was seated on one of two benches on
either side of the back of the vehicle, and that while she was transported she was "thrown from
left to right in the back of the van."  Transcript of Trial at 26 (Dec. 11, 2007).  Nowhere does Ms.
Halcomb claim that she fell to the floor of the vehicle, or that she was thrown against its walls.

## 2.   Inappropriate, Lewd and Sexual Remarks

The Court also rejects Ms. Halcomb's argument that a reasonable jury could have found in her favor based on the allegation that certain unidentified MPD officers made lewd and sexual remarks about her and to her during her detention.  According to Ms. Halcomb, as she was escorted to her cell at D.C. General Hospital, "MPD officers made lewd jokes and vulgar remarks at [her] expense.  The MPD officers made statements such as 'look at her tits,' 'I would like to F that,' and 'I wonder what her ass looks like under that coat.'" D.C. Opp. at 3 (citations to record omitted).  If such remarks were made, they were, to say the least, "inappropriate."  Transcript of Trial at 27 (Dec. 11, 2007) (testimony of Ms. Halcomb).  Nevertheless, they were also fleeting and unaccompanied by any other threatening or degrading conduct.  Thus, they amount to no more than "insults, indignities [or] petty oppressions" – that is, acts that are certainly demeaning and unpleasant but not actionable in tort.  RESTATEMENT  § 46 cmt. d.

## 3.   Detention at D.C. General Hospital

Finally, the Court rejects Ms. Halcomb's argument that a reasonable jury could have found in her favor based on her detention in the "strong room" at D.C. General Hospital with a man dressed as a woman.  According to the brief filed on Ms. Halcomb's behalf:

> During that time, she feared for her physical safety and was terrified she might be raped.  These fears were so strong that she urinated on herself [rather than use the toilet in the cell], never sat down once through the entirety of her detention [because she was afraid she would be assaulted or raped if she did sit down,] and vomited.  When Ms. Halcomb informed the MPD officers assigned to the "strong room" that she was in a cell with a man, one of them responded "you're not at a hotel, you don't get your choice of rooms."

D.C. Opp. at 9 (citations to record omitted).  Ms. Halcomb contends that a reasonable jury could

find that the officer's comment alone constitutes extreme and outrageous conduct, because the officer abused his position of power by taunting Ms. Halcomb and refusing to help her.  See id. at 9-10.  Her primary argument, however, is that "the District's mere detention of Ms. Halcomb with a man would be sufficient to establish extreme and outrageous conduct."  Id. at 10.

The MPD officer's remark – "you're not at a hotel, you don't get your choice of rooms" – and his apparent failure to investigate Ms. Halcomb's complaint that she had been placed in a cell with a man could be construed as harsh, insensitive and certainly unprofessional.  But it bears little resemblance to other police conduct that has been deemed extreme, outrageous and an abuse of authority.  See, e.g., Drejza v. Vaccaro, 650 A.2d 1308 (D.C. 1994) (officer belitted and harassed plaintiff while she was trying to report that she was raped); Leinen v. City of Elgin, Civil Action No. 98-8225, 2000 WL 1154641 (N.D. Ill. 2000) (plaintiff subjected to an unnecessary strip search).  See also RESTATEMENT § 46 cmt. f.  The Court concludes that the alleged remark was, as a matter of law, "inconsiderate and unkind," King v. Kidd, 640 A.2d at 668 (quoting RESTATEMENT § 46 cmt. d) – not extreme and outrageous.  Cf. Kinberg v. Dist. of Columbia, Civil Action No. 94-2516, 1998 WL 10364, at *14 (D.D.C. Jan. 5, 1998), aff'd, 161 F.3d 44 (D.C. Cir. 1998) (police officer did not act outrageously, even assuming he used harsh words and took pleasure in arresting plaintiff).

Nor could a reasonable jury have concluded that detaining Ms. Halcomb with a man – even in the circumstances described by Ms. Halcomb at trial – constitutes extreme and outrageous conduct.  As noted above, the Court's evaluation of a defendant's conduct is to be guided by "(1) applicable contemporary community standards of offensiveness and decency, and (2) the specific context in which the conduct took place."  King v. Kidd, 640 A.2d at 668.  Both

factors count against Ms. Halcomb.  Requiring her to share a cell with a man for several hours simply does not constitute a "major outrage" under contemporary community standards of offensiveness and decency, even if that man is dressed as a woman.  RESTATEMENT § 46 cmt. f.[5] Moreover, even according to Ms. Halcomb, the man with whom she was detained was not abusive, dangerous or even arguably threatening.  Indeed, it appears that he was quite cordial.

> Q [by counsel for the District]: And the person in the cell you believe was, when you first saw the person you believed that the person was a female, correct?
>
> A [by Ms. Halcomb]: Well, yes.  She was wearing a dress, yes.
>
>                * * *
>
> Q: And the two of you had a very brief conversation; isn't that correct?
>
> A: She asked me what I was in for and where I worked.
>
> Q: And you responded to her?
>
> A: I told her that I had been falsely accused of not paying a fare, and I worked for the Senate.
>
>                * * *
>
> Q: And that was basically the extent of the conversation; isn't that correct?
>
> A: Basically, it was, yes.
>
> Q: And this woman never approached you inappropriately, correct?

---

[5]     Ms. Halcomb testified that the man urinated in the cell's toilet while Ms. Halcomb was present in the cell.  Had the cell not been designed such that a person using the toilet was largely or entirely hidden from view, see D.C. Mot. at 9, or if Ms. Halcomb's cell mate had exposed his genitals to her when using the toilet, see infra at 12, the Court's analysis might be different.

A: No, he did not.

Q: And when the person used the toilet [in the cell], you never saw the person's genitals, did you?

A: I didn't really see them, or it, but I could tell that there was one.

Q: My question is, you never saw the genitals, did you?

A: No, not *per se*, no.

Transcript of Trial at 98-99 (Dec. 11, 2007).  The Court concludes that this is simply not a case "in which the recitation of the facts to an average member of the community would . . . lead him to exclaim, 'Outrageous!'"  RESTATEMENT § 46 cmt. d.[6]

Finally, as noted above, "there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress."  RESTATEMENT § 46 cmt. j.[7]  Ms. Halcomb claims that being detained with this man caused her to refuse to sit for fear of deadly assault or rape, to urinate on herself rather than use the toilet, and to vomit.  No reasonable jury, upon hearing Ms. Halcomb's description of her uneventful interactions with this man, could regard these particular fears or reactions (or their severity) as reasonable and justified.

––––––––––––––––––––

[6]      If the MPD knew that Ms. Halcomb's cell mate was a man, then it disregarded MPD policies requiring prisoners to be separated by sex.  But conduct is not necessarily extreme and outrageous for purposes of the tort of intentional infliction of emotional distress merely because the conduct violates official policies.  See RESTATEMENT § 46 cmt. d.

[7]      The distress asserted by a plaintiff need not be reasonable and justified if "it results from a peculiar susceptibility to such distress of which the actor has knowledge."  RESTATEMENT § 46 cmt. j.  Ms. Halcomb claims that the MPD officers detaining her "knew that [she] was 'peculiarly susceptible to emotional distress,'" D.C. Opp. at 10, but fails to explain (1) why and how she was peculiarly susceptible to emotional distress, or (2) how the unidentified MPD officers knew she was peculiarly susceptible to emotional distress.  See Cotton v. District of Columbia, 541 F. Supp. 2d 195, 206 n. 2 (D.D.C. 2008).

## C. *Necessity for Expert Testimony*

The District of Columbia also is entitled to judgment as a matter of law because Ms. Halcomb failed to present expert testimony demonstrating whether and to what extent the alleged acts of MPD officers – as distinct from other factors – caused her to suffer severe emotional harm.  For reasons explained below, Officer Woods is not entitled to judgment as a matter of law on this basis.

The District of Columbia Court of Appeals has held that expert testimony is necessary to demonstrate a causal link between a defendant's act and a plaintiff's harm "in cases presenting medically complicated questions due to multiple and/or preexisting causes[.]"  Baltimore v. B.F. Goodrich Co., 545 A.2d 1228, 1231 (D.C. 1988) (requiring expert testimony as to causation where plaintiff's depression and anxiety was potentially traceable to many sources, including the defendant's conduct, marital discord, and a discrimination lawsuit that the plaintiff had initiated before the accident).  Expert testimony is necessary in such cases "[t]o prevent the jury from engaging in speculation" as to whether and to what extent the allegedly unlawful acts at issue – as distinct from other potential factors – caused plaintiff's harm.  Id.  See Gray Line, Inc. v. Keaton, 428 A.2d 360, 362 (D.C. 1981); Wilhelm v. State Traffic Safety Commission, 185 A.2d 715, 719 (D.C. 1962).[8]

In this case, the emotional distress Ms. Halcomb suffered after her arrest and detention was, like the emotional distress in Baltimore, "multifactorial and highly complicated."

---

[8]    This rule is subject to certain exceptions: "(1) the disability first emerged coincidentally with or very soon after the [alleged] act, or (2) the disability was of a type which by its very nature reflected its cause, or (3) the cause of the injury related to matters of common experience, knowledge, or observation of laymen."  Baltimore v. B.F. Goodrich Co., 545 A.2d at 1231.  Neither party suggests that any of these exceptions are applicable here.

Baltimore v. B.F. Goodrich Co., 545 A.2d at 1231.  It was multifactorial because it was

potentially traceable to at least three different sources: (1) the alleged acts of Officer Woods;

(2) the alleged acts of MPD officers; and (3) an employment discrimination suit that Ms.

Halcomb filed prior to her arrest and detention.[9]  It was complicated because it manifested itself

in a variety of ways, including: specific anxieties; insomnia; weight loss; uncontrollable weeping;

loss of religious faith; and social withdrawal.  See Transcript of Trial at 54-55 (Dec. 11, 2007)

(testimony of Ms. Halcomb).  Because of the complex and multifactorial nature of her emotional

distress, Ms. Halcomb was required to offer expert testimony to ensure that the jury was not left

to speculate as to its cause or causes.  Ms. Halcomb did, in fact, offer expert testimony relevant

to this causation issue, and that testimony was sufficient to permit the jury to conclude that

Officer Woods' acts bore some causal relationship to Ms. Halcomb's distress.  That testimony

was not, however, sufficient to permit the jury to conclude, without speculation, that the acts of

MPD officers bore some causal relationship to Ms. Halcomb's distress.

        At trial, Ms. Halcomb called as a witness Dr. Danny Mamodesene, a specialist in

internal medicine.  Dr. Mamodesene examined Ms. Halcomb soon after her ordeal.  He testified

that Ms. Halcomb was suffering from "posttraumatic insomnia and anxiety" when he first

examined her.  Transcript of Trial at 83 (Dec. 12, 2007).  His testimony made clear, however,

that this diagnosis was based on Ms. Halcomb's description of how she had been "arrested" and

---

[9]     The Court precluded the District from introducing evidence of this suit at trial to
prevent unfair prejudice to Ms. Howard.  The Court did, however, permit the District to ask Ms.
Halcomb if she was suffering emotional distress as a result of prior events at the time of her
arrest and detention.  According to Ms. Halcomb, the discrimination suit and the events giving
rise to it inflicted upon her "a devastating loss of enjoyment of life" and "substantial emotional
pain and anguish."  Transcript of Trial at 111 (Dec. 11, 2007).

"assaulted" during an "encounter" with a "security officer" at Union Station – that is, how she had been treated *by Officer Woods*, not the MPD.  Id. at 81-84, 98-99.  Thus, the jury had some basis for finding and assessing a causal relationship between Ms. Halcomb's emotional distress and the acts of Officer Woods.  In contrast, Dr. Mamodesene's testimony failed to establish or even suggest any causal relationship between Ms. Halcomb's emotional distress and the acts of MPD officers.  The jury therefore could only speculate as to whether and to what extent Ms. Halcomb's distress was traceable to the acts of MPD officers and/or a preexisting cause – that is, her discrimination suit.

        In response to this last point, Ms. Halcomb argues that "no expert testimony is required to succeed on an emotional distress claim."  D.C. Opp. at 7.  Most of the cases she cites in support of that proposition, however, are inapposite.  Those cases address whether a plaintiff need prove the *existence* or *severity* of her alleged emotional injury by expert testimony.  They do not address whether a plaintiff need prove the *causal link* between a defendant's action and her alleged emotional injury by expert testimony when "medically complicated questions [about causation] due to multiple and/or preexisting causes" arise.  See Adams v. Vertex, Inc., 2007 WL 1020788 at *4; David v. District of Columbia, 436 F. Supp. 2d 83, 91 n.3 (D.D.C. 2006); Sanders v. District of Columbia, Civil Action No. 97-2938, 2002 WL 655468, at *2 n.1 (D.D.C. Apr. 15, 2002); Jefferson v. Milvets System Technology, Inc., 986 F. Supp. 6, 8 n.1 (D.D.C. 1997).  Ms. Halcomb does cite one case from the Southern District of Texas for the proposition that expert testimony with respect to causation is not necessary to prevail on an intentional infliction of emotional distress claim.  See D.C. Opp. at 8 (citing Salinas v. Rubin, 126 F. Supp. 2d 1026 (S.D. Tex. 2001), *vacated in part*, Salinas v. O'Neill, 286 F.3d 827

15

(5th Cir. 2002)).  That case is distinguishable, however, because the issue of causation was not

nearly so complicated in that case as it is in this case.  The court therefore found that there was

no need for expert testimony to establish a "sufficient causal connection" between defendant's

conduct and plaintiff's alleged emotional injury.  Salinas v. Rubin, 126 F. Supp. 2d at 1032

(quotation marks and citation omitted).

    For the foregoing reasons, the Court concludes that the District of Columbia is

entitled to judgment as a matter of law, but that Officer Woods is not.  Two Orders consistent

with this Opinion shall issue this same day.

    SO ORDERED.


          /s/_____
          PAUL L. FRIEDMAN
          United States District Judge


DATE: April 28, 2009